UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Femi Joseph Daramola, | No. 24-cv-761 (KMM/DJF) |
| Plaintiff, | |
| v. | **ORDER** |
| Dungarvin Incorporated and Lura Marie Solie, | |
| Defendants. | |

---

The Plaintiff, Femi Daramola, brought this action against his former employer, Defendant Dungarvin Incorporated, and one of his former supervisors, Defendant Lura Marie Solie. Mr. Daramola alleged that on March 31, 2023, Dungarvin wrongfully discharged him from his position as a mental health specialist. This matter is before the Court on Defendants' Motion to Dismiss Mr. Daramola's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Defs.' Mot. (Doc. 27). For the reasons that follow, the motion is granted in part and denied in part.

## BACKGROUND

Mr. Daramola filed his Complaint on March 4, 2024, Compl. (Doc. 1), and because this matter is before the Court on a motion for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), the Court treats the well-pleaded facts alleged in the Complaint as true at this stage. *E.g.*, *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). Because Mr. Daramola is a *pro se* Plaintiff, the Court construes his Complaint liberally—this means that the Court

1

attempts to place his allegations within the appropriate legal framework. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

Mr. Daramola began working for Dungarvin as a mental health specialist in February or March 2022. Compl. at 3, ¶ a. After he was hired, Mr. Daramola "was under investigation due to an incident concerning a Vulnerable Adult, VA, that I had reported at the VA's home on Friday, January 20, 2023." *Id.* Dungarvin "discharged [Mr. Daramola] from his position on March 31, 2023." *Id.* Mr. Daramola alleges that Dungarvin terminated him because he is a Black man in violation of Title VII of the Civil Rights Act of 1964. *Id.* at 3, ¶¶ a–b.

Although not alleged in his Complaint, Mr. Daramola's opposition to the Defendants' motion to dismiss provides additional context for his claims.[1] Mr. Daramola asserts that Dungarvin "intentionally manipulated staffing levels, leading to situations where he was required to work alone for extended periods." Pl.'s Opp'n 3 (Doc. 42).

> Specifically, [he] was assigned to manage multiple clinets consecutively for over 180–200 hours without any breaks or time off. This not only compromised his ability to perform his job effectively but also negatively impacted his health. Such an extreme work schedule raises questions about [Dungarvin's] commitment to employe welfare and adherence to labor laws, particularly if the treatment was not equally applied to all employes, as it was not applied to [Defendant Solie] in this case.

---

[1] When evaluating a motion to dismiss a *pro se* plaintiff's complaint, district courts are required to consider the allegations in the complaint as well as the allegations in the plaintiff's response to the motion to dismiss. *Pratt v. Corrs. Corp. of Am.*, 124 F. App'x 465, 466 (8th Cir. 2005) (per curiam); *Neudecker v. Boisclair Corp.*, 351 F.3d 361, 362 (8th Cir. 2003); *Anthony v. Runyon*, 76 F.3d 210, 214 (8th Cir. 1996).

2

*Id.*

On several occasions, Mr. Daramola attempted to communicate his health concerns to Dungarvin, including calling, texting, and emailing Dungarvin about his difficulties with stress and working in homes where clients smoked. *Id.* at 4. Dungarvin and Defendant Solie allegedly ignored his complaints. *Id.* Mr. Daramola states that he was denied adequate time off, while other employees who were not of the same race were granted leave and time off. *Id.* Defendant Solie allegedly denied him the opportunity to take needed work breaks, ignored his health complaints, and changed his shift time without prior acceptable notice. *Id.* at 15. In part, Mr. Daramola contends that these employment practices subjected him to forced labor without appropriate time off in violation of 18 U.S.C. § 1589, and the Fair Labor Standards Act, and Dungarvin's alleged threats to terminate his employment or demote him if he did not comply with its "excessive demands" was a violation of his labor rights under the National Labor Relations Act. *Id.* at 5–7. Further, Mr. Daramola contends that while his requests for more reasonable working conditions were ignored, "other employees received accommodations." *Id.* at 15.

On January 20 and 21, 2023, Mr. Daramola alleges that he reported "an incident involving a Vulnerable Adult (VA), [and] [f]ollowing this report, [he] became the subject of an internal investigation." *Id.* at 1. During a subsequent investigation by the Minnesota Department of Human Services ("MNDHS") into whether Mr. Daramola provided proper care to a resident, he alleges that Dungarvin refused to provide complete video footage and

scheduling records relevant to the incident. Pl.'s Opp'n at 4.² Further, he asserts that Defendants forged documents regarding his employment and made false statements to the MNDHS. *Id.* at 7. "On January 24, 2023, after the Plaintiff had been suspended from duty by [Dungarvin], Dungarvin . . . and [Solie] coerced and conspired to sigh the Plaintiff's training document and testified and assumed the position of responsibility that the Plaintiff [was] properly trained to look after the program." *Id.* Specifically, he alleges that "Ms. Solie knowingly signed the Plaintiff's training documents, even though he did not receive the necessary training as required by the agency's protocols from her," including placing different dates and times regarding the training sessions Mr. Daramola received. *Id.* at 7–8. As a result, she "obstructed the investigative process." *Id.* at 8. Mr. Daramola contends that these actions violate 8 U.S.C. § 1324c and 18 U.S.C. § 1621. *Id.* at 7–8.

Mr. Daramola further alleges that "his termination was directly linked to his reporting of forced labor practices and unethical work conditions at Dungarvin. . . ." *Id.* at 9. After Mr. Daramola reported Dungarvin's labor practices, he states that he "faced immediate repercussions, including intimidation and threats. . . ." *Id.* He contends that this employment practice constitutes unlawful witness tampering in violation of 18 U.S.C.

---

² Although not spelled out in Plaintiff's Complaint or in his opposition to the motion to dismiss, it appears that MNDHS's investigation resulted in a determination by the agency that Mr. Daramola's conduct constituted maltreatment against a vulnerable adult, which led MNDHS to disqualify him from any position involving direct contact with individuals receiving services from organizations that require background checks by MNDHS. *See* Defs.' Mem. at 1; *see also* Compl. at 3 ¶¶ a, g (stating that "a Minnesota State agency imposed an embargo on me from working on any program licensed under its jurisdiction").

§ 1623, and retaliation against a witness or informant in violation of 18 U.S.C. § 1513. *Id.* at 9–11.

## DISCUSSION

### I. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard does not require the inclusion of "detailed factual allegations" in a pleading, but the complaint must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In applying this standard, the Court must assume the facts in the complaint to be true and take all reasonable inferences from those facts in the light most favorable to the plaintiff. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986); *see Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019). But the Court need not accept as true any wholly conclusory allegations or legal conclusions that the plaintiff draws from the facts pled. *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

### II. Analysis

#### A. Forced Labor and Other Claims

Defendants seek to dismiss claims under several statutes referenced in Mr. Daramola's pleadings on the grounds that he fails to allege the claim's essential elements or because the laws he references do not provide a private right of action.

5

Specifically, Defendants argue that Mr. Daramola's has failed to plead sufficient facts to state a forced-labor claim under the perpetrator-liability provisions of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1589. Defs.' Mem. 8–9; Defs.' Reply 4–5. Second, Defendants argue that Mr. Daramola's claims under 8 U.S.C. § 1324, 18 U.S.C. § 1623, and 18 U.S.C. § 1513 should be dismissed because there is no private right of action under any of those statutes. Defs.' Mem. 9–10; Defs.' Reply 5–7. For the reasons stated below, the Court finds the Complaint fails to state a claim under any of these provisions.

### 1. Forced Labor – 18 U.S.C. § 1589[3]

To state a perpetrator-liability claim under § 1589, a plaintiff must allege facts showing that the defendant "provide[d] or obtain[ed] the labor or services" of the plaintiff by use of the following means: (1) the use of force, threats of force, use of physical restraint, or threats of physical restraint against the plaintiff or another; (2) causing or threatening serios harm to the plaintiff or another; (3) the abuse of, or threatened abuse of the law or legal process; or (4) the use of "any scheme, plan, or pattern intended to cause

---

[3] The TVPA states the following regarding the right of a victim to bring a civil action against a perpetrator of forced labor:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595.

the [plaintiff] to believe that, if [he] did not perform such labor or services, [he] would suffer serious harm or physical restraint[.]" 18 U.S.C. § 1589(a)(1)–(4); *Griffin v. Alamo*, No. 4:14-cv-4065, 2016 WL 7391046, at *4 (W.D. Ark. Dec. 21, 2016) ("In order to successfully plead a violation of § 1589's prohibition of forced labor, 'plaintiff must allege that the . . . defendants knowingly obtained the labor of another by means of force, serious harm, abuse of legal process, threats of such or by creating the belief that refusal to work will result in serious harm to them or another.'") (quoting *Martinez v. Calimlim*, 651 F.Supp.2d 852, 859 (E.D. Wis. 2009)); *Mallela v. Cogent Infotech Corp.*, 2020 WL 2541860, at *4 (W.D. Pa. May 19, 2020) (explaining that a plaintiff asserting a claim under the TVPA must allege that the defendant "intended to coerce him to remain in his job; and . . . that he reasonably believed that the threat of harm was so serious that he had no choice but to remain [defendant's] employee").

>The TVPA explains that "serious harm" includes the following:
>
>>any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or continue performing labor or services in order to avoid incurring that harm.

18 U.S.C. § 1589(c)(2). "The linchpin of the serious harm analysis under § 1589 is not just that serious harm was threatened but that the employer intended the victim to believe that such harm would befall her." *Norambuena v. W. Iowa Tech Cmty. Coll.*, No. C20-4054-LTS, 2022 WL 987946, at *9 (N.D. Iowa Mar. 31, 2022) (quoting *United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011)).

7

Having carefully reviewed the Complaint, as well as Mr. Daramola's other filings, the Court finds that he fails to state a forced labor claim under the TVPA. Mr. Daramola does not allege any facts that would support an inference that Dungarvin intended to coerce him to remain in his job. *See Mallela*, 2020 WL 2541860, at *5 (dismissing a plaintiff's TVPA claim for failure to allege "bad intent or scienter" through pleading "some set of inferences or circumstances of conscious misbehavior or recklessness" by the defendant). In addition, Mr. Daramola does not allege that the Defendants engaged in any conduct constituting the use of force or threatened force, the use of physical restraint or threats of physical restraint, the abuse or threatened abuse of the law or legal process, nor employed any scheme to lead Mr. Daramola to believe that if he did not continue working for Dungarvin, he would be subjected to serious harm. The allegations do not show that Mr. Daramola was "severely underpaid," that he was "confined, starved, or physically abused," nor that he was "coerced into staying [in his mental health specialist job] by means of an employer threatening objectively harmful things. . . ." *Id.* Nor are the allegations in this case anything like those in other cases where courts have found plaintiffs sufficiently stated a forced-labor claim under the TVPA. *Id.* (collecting cases).

Accordingly, Mr. Daramola's claims under the TVPA, 18 U.S.C. § 1589, are dismissed.

### 2. Other Statutory Claims

Next, the Court finds that Mr. Daramola has failed to state a claim under the other federal statutes he references. These include 18 U.S.C. §§ 1621, 1623, and 1513, and 8 U.S.C. § 1324. None of these statutes contemplates a private right of action and,

consequently, Mr. Daramola's Complaint fails to state a claim under them. *Horde v. Elliot*, No. 17-cv-800 (WMW/SER), 2018 WL 987683, at *15 (D. Minn. Jan. 9, 2018) ("[F]ederal statutes that do not contemplate a private right of action fail to confer federal jurisdiction."), *report and recommendation adopted,* No. 17-cv-800 (WMW/SER), 2018 WL 985294 (D. Minn. Feb. 20, 2018).

Several of the statutes Mr. Daramola references are found within the federal criminal code. These include 18 U.S.C. § 1621 (perjury), 18 U.S.C. § 1623 (false declarations before grand jury or court), and 18 U.S.C. § 1513 (retaliating against a witness, victim, or an informant). Such federal criminal statutes generally do not provide individuals seeking to pursue civil claims in litigation a private right of action. *See Markham v. Hennepin Cnty. Clerk Office*, No. 24-cv-1694 (JMB/ECW), 2024 WL 3552961, at *1 (D. Minn. July 26, 2024) (citing *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994)). Mr. Daramola points to no statutory language by which the Court could conclude that any of these criminal laws creates a private right of action, and the Court finds that they do not. *See Nabaya v. C.J. Byron*, 264 F. Supp. 3d 187 (D.D.C. 2017) (finding that 18 U.S.C. § 1623 does not create a private right of action and dismissing that claim under Rule 12(b)(6); *Goodin v. Laporte*, 2024 WL 4892465, at *2 (D. Nev. Nov. 26, 2024) (finding no private right of action under 18 U.S.C. § 1621); *Klinakis v. Altus Jobs, LLC*, No. 6:22-CV-1756-RBD-RMN, 2023 WL 3563599, at *2 (M.D. Fla. Mar. 21, 2023) (finding no private right of action under 18 U.S.C. § 1513).

That leaves only Mr. Daramola's reference to 8 U.S.C. § 1324(c). It is difficult to see what this statute has to do with the allegations in this case as it generally concerns the

9

federal government's regulation of immigration. More specifically, § 1324 creates criminal penalties for bringing into the United States and harboring certain aliens, and § 1324(c) creates a limited exception to the statute's operative subsections. Nothing in this statute suggests that Congress intended to create a private right of action. *See Pruitt v. Warren*, 2022 WL 3970002, at *2 (N.D. Tex. Aug. 4, 2022) (finding no private cause of action under 8 U.S.C. § 1324(c)). Accordingly, the Court finds that the Complaint fails to state a claim under this immigration statute.

### B. Title VII Claims

As construed by this Court, the real gravamen of Mr. Daramola's Complaint is that Dungarvin's employment practices and its decision to terminate his employment constituted unlawful discrimination against him in violation of Title VII. Defendants seek dismissal of these claims for a variety of reasons. As explained below, the Court finds that Mr. Daramola fails to state a Title VII claim against Defendant Solie.

#### 1. Exhaustion and Statute of Limitations

Defendants first argue that Plaintiff's claims under Title VII must be dismissed for failure to exhaust administrative remedies because he does not allege that he filed an EEOC charge, requested or received a right-to-sue letter, or otherwise pursued administrative remedies. Defs.' Mem. 6 (Doc. 29). However, Defendants withdrew this argument in their reply. Defs.' Reply 2 n.2. The Court notes that Mr. Daramola attached an EEOC right-to-sue letter to his Complaint dated December 4, 2023. (Doc. 1-1). Although a copy of Mr. Daramola's charge of discrimination is not attached to the Complaint, the fact that he received a right to sue letter, at a minimum, creates a fact issue that cannot be resolved on

10

a motion to dismiss concerning the degree to which he exhausted any Title VII discrimination claims. Accordingly, the motion to dismiss is denied in part to the extent it seeks dismissal for failure to exhaust.

Defendants also argue that Mr. Daramola's Title VII claims are barred by the statute of limitations because he allegedly failed to file a charge with the EEOC raising Title VII complaints within 300 days of the allegedly discriminatory act. Defs.' Mem. 6. The Court rejects this argument for similar reasons.[4] Although Defendants suggest that Mr. Daramola failed to file a charge with the EEOC by the January 25, 2024 deadline based on his March 31, 2023 termination, they again ignore the December 4, 2023 right-to-sue letter attached to his Complaint. (Doc. 1-1). The most reasonable inference, taken in the light most favorable to the Plaintiff, is that he filed a charge of discrimination with the EEOC *before* he received the right-to-sue letter. On this record, and applying the appropriate lens under Rule 12(b)(6), the Court cannot conclude that Mr. Daramola's Title VII claims are time-barred.

### 2. Defendant Solie

Defendants next argue that Mr. Daramola's Title VII claims against Defendant Solie should be dismissed because she is not an "employer" within the meaning of the statute and that Title VII does not provide for individual liability of supervisors. Defs.' Mem. 7. The Court agrees. Under 42 U.S.C. §§ 2000e-2 and 2000e-3, employers are prohibited from engaging in employment practices that discriminate against an employee based on

---

[4] It is possible that Defendants also intended to withdraw their statute-of-limitations argument in their Reply, but because the Reply does not expressly do so, the Court addresses the issue.

11

that person's based on membership in a protected class or to retaliate against an employee based on his protected conduct. However, there is no individual supervisor liability under Title VII. *Hill v. Ark. Dep't of Human Servs.*, 742 F. App'x 159 (8th Cir. 2018) (per curiam) (affirming district court's dismissal of plaintiff's claims against individual defendants); *Van Horn v. Best Buy Stores, LP*, 526 F.3d 1144, 1147 (8th Cir. 2008) (explaining that Title VII "does not provide for an action against an individual supervisor"). Mr. Daramola's reliance on 29 C.F.R. § 1604.11 in his opposition does not alter this rule.[5] Accordingly, to the extent Mr. Daramola asserts Title VII claims against Ms. Solie, those claims are dismissed with prejudice.

### 3. Defendant Dungarvin

Finally, Dungarvin argues that Mr. Daramola fails to state a Title VII claim against it because he does not sufficiently allege that he was qualified for his position or that his firing occurred under circumstances giving rise to an inference of discrimination. Defs.' Mem. 7–8. Based on the Court's careful review of the allegations in Mr. Daramola's Complaint and the material included in his response to the motion to dismiss, the Court finds that Mr. Daramola has sufficiently alleged facts stating a claim for employment discrimination.

First, Dungarvin argues that this Court must disregard each and every statement in Mr. Daramola's 18-page response that does not appear in his Complaint. Defs.' Reply 3

---

[5] Section 1604.11 is an EEOC regulation that applies to claims of sexual harassment and, in part, discusses vicarious liability of an employer when one employee engages in harassing conduct against another employee. *See* 29 C.F.R. § 1604.11(d). It does not create individual supervisor liability.

("Plaintiff's legal arguments in the 'Circumstantial Evidence' section of his Response are based on allegations that *do not exist in his Complaint*, and Plaintiff cites to exhibits that are not specific ally identified in the pleadings. For this reason the Court should disregard this argument in his entirety."). The Court disagrees that it is forbidden from considering such materials; indeed, the law requires the Court to take these matters into account in this *pro se* litigation. Most notably, in *Pratt v. Corrs. Corp. of Am.*, in reversing a district court's dismissal of a *pro se* complaint, the Eighth Circuit explained that the court "was required to consider the allegations not only in [the plaintiff's] pro se complaint, but also in his motion to amend, his response to defendants' motion to dismiss, and the attachments to those pleadings." 124 F. App'x at 466; *id.* at 467 (discussing the extra-complaint materials that undermined the district court's dismissal order).

Next, Dungarvin argues that even if the Court does consider the material beyond the Complaint itself, Mr. Daramola does not provide any allegation indicating that he was subjected to discrimination on the basis of his race. Dungarvin argues that Mr. Daramola's materials include only conclusory allegations concerning whether he met his employer's legitimate expectations and whether there are facts supporting an inference of discrimination. Defs.' Reply 2–4. The Court finds otherwise. True, Mr. Daramola's *pro se* submissions do not as neatly set out the facts as one might expect in a pleading drafted by an attorney, but the Court cannot conclude that he has failed to state a claim of unlawful employment discrimination under Title VII.

Dungarvin is correct that to establish a prima facie case of discrimination under Title VII, a plaintiff must show that (1) he is a member of a protected class, (2) he was qualified

13

for his position, (3) he suffered a materially adverse employment action, and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *See Cole v. Gr. Health Plan, Inc.*, 105 F.4th 1110, 1113 (8th Cir. 2024). However, "[a]t the pleading phase, a plaintiff need not plead facts establishing a prima facie case for their Title VII claim." *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021). The elements of a prima facie Title VII case "are 'part of the background against which a plausibility determination should be made,'" and the court may use them "as a prism to shed light upon the plausibility of the claim." *Id.* (quoting *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016)).

As summarized above, the Court concludes that Mr. Daramola has plausibly alleged an employment discrimination claim. He asserts, and Dungarvin does not dispute, that he is a member of a protected group and that he suffered a materially adverse employment action. Further, contrary to Dungarvin's argument, the Complaint and other materials in the file plausibly allege a basis to infer that Mr. Daramola met the legitimate expectations of his employer and was treated differently from other employees who were not of the same race. Read in the light most favorable to him, Mr. Daramola's filings support an inference that he was doing everything he could to keep up with an intense work schedule and to work within Dungarvin's last minute changes to his scheduled hours. He was faced with an employer that failed to respond to his complaints about such scheduling issues and other conditions in which he had to work. And Mr. Daramola has sufficiently alleged, for purposes of surviving a motion to dismiss, that Dungarvin imposed those conditions on

him while treating other employees who were not of the same protected group more favorably.

Accordingly, the Court finds that Mr. Daramola has stated a claim for relief under Title VII against Dungarvin and denies the motion to dismiss such claims from this proceeding. Of course, this does not mean that Mr. Daramola will ultimately prevail on his Title VII claims in this case, and the parties should not take this decision to express any opinion on the ultimate merits of either side's position. The Court merely finds that the Complaint and other submissions from Mr. Daramola create a sufficiently plausible basis to survive the Rule 12(b)(6) motion.

## ORDER

For the reasons set forth above, **IT IS HEREBY ORDERED THAT**

1. Defendant's Motion to Dismiss (Doc. 27) is **granted in part** and **denied in part**.

2. The motion is granted in part as follows:

    a. Plaintiff's Title VII claims against Defendant Lura Marie Solie are dismissed for failure to state a claim.

    b. Plaintiff's claims under federal criminal statutes (18 U.S.C. §§ 1513, 1621, and 1623) and under 8 U.S.C. § 1324 are dismissed because there exists no private right of action.

3. The motion is otherwise denied.

Date: February 25, 2025     *s/Katherine Menendez*
                                                   Katherine Menendez
                                                   United States District Judge